IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED,<br><br>              Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>              Defendants. | Case No. 23-cv-04980<br><br>**Judge Andrea R. Wood**<br><br>**Magistrate Judge M. David Weisman** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

      Plaintiff Dyson Technology Limited ("Dyson" or "Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. Dyson Products and Patented Design ................................................................... 2

    B. Defendants' Unlawful Activities ........................................................................... 2

III. ARGUMENT .................................................................................................................... 3

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................... 4

    B. Dyson Will Likely Succeed on the Merits ............................................................. 5

    C. There Is No Adequate Remedy at Law, and Dyson Will Suffer Irreparable Harm in the Absence of Preliminary Relief ......................................................................... 5

    D. The Balancing of Harms Tips in Dyson's Favor, and the Public Interest Is Served by Entry of the Injunction ........................................................................................ 8

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 9

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Dyson Design Is Appropriate ........................................... 9

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate ............................. 10

    C. Dyson Is Entitled to Expedited Discovery .......................................................... 11

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................ 12

VI. CONCLUSION ............................................................................................................... 12

**MEMORANDUM OF LAW**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Dyson Technology Limited ("Dyson" or "Plaintiff") is requesting temporary *ex parte* relief based on an action for design patent infringement against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are offering for sale and selling the same unauthorized and unlicensed product, namely a hair styling and hair care apparatus, that infringes Dyson's patented design (the "Infringing Products") through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Infringing Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Dyson is forced to file this action to combat Defendants' infringement of its patented design, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces.

II.   **STATEMENT OF FACTS**

    A.  **Dyson Products and Patented Design**

Plaintiff Dyson Technology Limited is a limited company having its principal place of business at Tetbury Hill, Malmesbury, Wiltshire, United Kingdom, SN16 0RP. *See* Declaration of Aimee Charlotte Brasington (the "Brasington Declaration") at ¶ 3. Dyson is a world-famous technology company that designs, manufactures and distributes hair care products, such as hair stylers and hair dryers, as well as a variety of other products (collectively, the "Dyson Products"). *Id*. at ¶ 4.

Dyson Products are known for their distinctive patented designs. *Id.* at ¶ 8. These designs are broadly recognized by consumers. *Id*. Hair styling products styled after these designs are associated with the quality and innovation that the public has come to expect from Dyson Products. *Id*. Dyson uses these designs in connection with its Dyson Products, including, but not limited to United States Patent No. D853,642 (the "Dyson Design"). *Id.* Dyson is the lawful assignee of all right, title, and interest in and to the Dyson Design. *Id*. at ¶ 9.

    B.  **Defendants' Unlawful Activities**

In recent years, Dyson has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. Complaint [1] at ¶ 12. Dyson's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Infringing Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. *Id.* at ¶¶ 14-16. If Defendants provide additional credible information regarding their identities, Dyson will take appropriate steps to amend the Complaint.

2

**III.	ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Dyson's reputation. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Dyson Design and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases, and move any assets to off-shore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 3-9. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Dyson respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores

that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Infringing Products to residents of Illinois. *See* Complaint at ¶¶ 2, 14, 21. *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-627 (7th Cir. 2022); *see, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Dyson substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the

4

injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Dyson Will Likely Succeed on the Merits

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). In this case, Dyson is the lawful assignee of all right, title and interest in and to the Dyson Design. Brasington Declaration at ¶ 9. Dyson has submitted extensive documentation that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use the same product, namely the hair styling and hair care apparatus, that infringes directly and/or indirectly the Dyson Design. *Id*. at ¶ 10. The documentation submitted by Dyson shows that an ordinary observer would be deceived into thinking that the Infringing Product was the same as the Dyson Design. *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008)). Finally, Dyson has not licensed or authorized Defendants to use the Dyson Design, and none of the Defendants are authorized retailers of genuine Dyson Products. *Id*. at ¶ 12. Accordingly, Dyson is likely to establish a *prima facie* case of design patent infringement.

### C. There Is No Adequate Remedy at Law, and Dyson Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable harm resulting from design patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that]

5

injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Dyson only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Dyson is likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. Brasington Declaration at ¶¶ 19-23. Each of these harms, independently, constitutes irreparable harm and offers a basis on which preliminary relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quote and cites omitted).

Defendants' infringement erodes and devalues Dyson's rights in the Dyson Design, thereby risking injury to Dyson's goodwill and reputation and interfering with Dyson's ability to exploit the Dyson Design. Brasington Declaration at ¶¶ 19-23. *See, e.g., Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

6

Defendants' infringement of the Dyson Design by sale of the Infringing Products is likely to cause consumer confusion with genuine Dyson Products, resulting in harm to Dyson's reputation and loss of customers' goodwill. Brasington Declaration at ¶¶ 19-23. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Dyson is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the Dyson Design in the Infringing Product is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgement is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond*

7

*Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *E.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike*, 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

For the reasons stated above, Dyson will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Brasington Declaration at ¶ 24.

### D. The Balancing of Harms Tips in Dyson's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Dyson has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Dyson will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. This is because any harm to Defendants that could possibly result from a

8

temporary restraining order is self-inflicted. Defendants took a calculated risk when they engaged in design patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc*., 664 F.3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

As Dyson has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Dyson's favor. The public is currently under the false impression that Dyson has granted a license or permission to Defendants with respect to the Dyson Design. In this case, the injury to the public is significant, and the injunctive relief that Dyson seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Dyson Design Is Appropriate

Dyson requests a temporary injunction requiring the Defendants to immediately cease making, using, offering for sale, selling, and importing the Infringing Products. Such relief is necessary to stop the ongoing harm to Dyson's control over its rights in the Dyson Design, its reputation, and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Dyson Design. The need for *ex parte* relief is magnified in today's global economy where infringers can operate anonymously over the

9

Internet. Dyson is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute Infringing Products. Many courts have authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g., Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016)

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Dyson requests an *ex parte* restraint of Defendants' assets so that Dyson's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Dyson meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Dyson has shown a strong likelihood of succeeding on the merits of its design patent infringement claim, so according to 35 U.S.C. § 289, Dyson is entitled to recover "the extent of [Defendants'] total profit." Dyson's Complaint seeks, among other relief, that Defendants account for and pay to Dyson all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Dyson's request for a prejudgment asset freeze to preserve relief sought by Dyson.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose*

*Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id*.

Dyson has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts. Accordingly, an asset restraint is proper.

**C. Dyson Is Entitled to Expedited Discovery**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007). (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Dyson respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their sales operations. The expedited discovery requested in Dyson's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Dyson's seizure and asset restraint may

11

have little meaningful effect without the requested relief. Accordingly, Dyson respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Dyson's evidence of design patent infringement, Dyson respectfully requests that this Court require Dyson to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' operations are irreparably harming Dyson's business, its well-known brand, and consumers. Without entry of the requested relief, Defendants' infringement of the Dyson Design in connection with the making, using, offering to sell, selling, or importing of the Infringing Products will continue to irreparably harm Dyson. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing, Dyson respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

| | |
|---|---|
| Dated this 2nd day of August 2023. | Respectfully submitted,<br><br>/s/ Justin R. Gaudio<br>Lawrence J. Crain<br>Justin R. Gaudio<br>Jake M. Christensen<br>Andrew D. Burnham<br>Greer, Burns & Crain, Ltd.<br>300 South Wacker Drive, Suite 2500<br>Chicago, Illinois 60606<br>312.360.0080 / 312.360.9315 (facsimile)<br>lcrain@gbc.law<br>jgaudio@gbc.law<br>jchristensen@gbc.law<br>aburnham@gbc.law<br><br>*Counsel for Plaintiff Dyson Technology Limited* |

13